AO 106 (Rev. 04/010) Application for Search Warrant     AUTHORIZED AND APPROVED/DATE:     /S Bow Bottomly 05/06/2024

# UNITED STATES DISTRICT COURT
### for the

| WESTERN | DISTRICT OF | OKLAHOMA |
|---------|-------------|----------|

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be search* | ) |
| *Or identify the person by name and address)* | ) |
| PROPERTY KNOWN AS: | )     Case No:   M-24-402   - STE |
| 1.  Apple iPhone, black in color | ) |
| | ) |
| IN THE POSSESSION OF: | ) |
| HSI Oklahoma City | ) |
| 3625 NW 56th St | ) |
| Oklahoma City, OK 73112 | ) |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property *(identify the person or describe property to be searched and give its location)*:

See Attachment A, which is attached and incorporated by reference.

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is attached and incorporated by reference.

The basis for the search under Fed. R. Crim.P.41(c) is *(check one or more)*:
- ☒  evidence of the crime;
- ☒  contraband, fruits of crime, or other items illegally possessed;
- ☒  property designed for use, intended for use, or used in committing a crime;
- ☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| | |
|---|---|
| 8 U.S.C. § 1324(a)(1)(a)(i) | bringing in an alien at a place other than a designated port of entry, |
| 8 U.S.C. § 1326(a) | illegal re-entry by a removed alien |
| 18 U.S.C. § 922(n) | prohibited person in possession of a firearm |
| 18 U.S.C. § 545 | smuggling goods into the United States contrary to law |
| 18 U.S.C. § 922(a)(1) | transporting firearms and ammunition in interstate or foreign commerce without a license |
| 19 U.S.C. § 1590 | aviation smuggling |
| 49 U.S.C. § 46306 | registration violations involving aircraft. |

The application is based on these facts:

See attached Affidavit of Special Agent Joshua R. Dickson, Homeland Security Investigations, which is incorporated by reference herein.

- ☒  Continued on the attached sheet(s).
- ☐  Delayed notice of _____ days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

Joshua R. Dickson
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: **May 6, 2024**

City and State: ████████████████
**Lawton, OK**

*Judge's signature*

SHON T. ERWIN, U.S. Magistrate Judge
*Printed name and title*

## WESTERN DISTRICT OF OKLAHOMA

## OKLAHOMA CITY, OKLAHOMA

STATE OF OKLAHOMA    )
                                 )
COUNTY OF OKLAHOMA )

### AFFIDAVIT

I, Joshua Dickson, Special Agent with Homeland Security Investigations having been duly sworn, depose and state as follows:

1.     I am currently employed as a Special Agent (SA) with Homeland Security Investigations (HSI). Formerly, I was a Border Patrol Agent with United States Border Patrol. I hold a bachelor's degree in criminal justice from the State University of New York - Plattsburgh. I am currently assigned to HSI Oklahoma City, Oklahoma. My working experience has been augmented by training I received at the Federal Law Enforcement Training Center. As part of my investigative experience as an HSI Special Agent, I have executed search and arrest warrants, conducted physical surveillance, analyzed records documenting the purchase and sale of illegal drugs, and spoken with other local and federal law enforcement officers, regarding the manner in which smugglers obtain, finance, store, manufacture, transport, and distribute their illicit smuggling operations.

2.    As an HSI Special Agent, I am an investigator or law enforcement officer

1

of the United States within the meaning of Title 18, United States Code, Section 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations and make arrests for offenses enumerated in Title 21, United States Code, Section 2516.

3.    This Affidavit is based upon the Affiant's personal investigation and upon information received from other law enforcement officers and agents and may not be inclusive of all evidence or information available, or of all facts known to me relative to this investigation.  Rather, I have included facts which are necessary to establish probable cause that the electronic devices described herein contains evidence on smuggling of illicit goods and/or persons.

4.    Based on my training and experience, evidence of criminal activity, to include motives, operational planning, operational preparation, and other relevant evidence will be found in the criminal's electronic devices including their cellular telephone or portable computers such as an Apple iPad.  This evidence often includes location data stored in the internal memory of the cellular telephone, encrypted communications between co-conspirators, non-encrypted communications between co-conspirators in the form of emails and text messages, and other accounts linked to the criminal and their criminal activity to include social media accounts which can be used in the planning and execution of a crime.

2

5.     This affidavit is made in support of an application for a search warrant to search and seize contraband, fruits, instrumentalities, and evidence of federal crimes in violation of 8 U.S.C. § 1324(a)(1)(a)(i) (bringing in an alien at a place other than a designated port of entry), 8 U.S.C. § 1326(a) (illegal re-entry by a removed alien), 18 U.S.C. § 922(n) (prohibited person in possession of a firearm), 18 U.S.C. § 545 (smuggling goods into the United States contrary to law), 18 U.S.C. § 922(a)(1) (transporting firearms and ammunition in interstate or foreign commerce without a license), 19 U.S.C. § 1590, (aviation smuggling), and 49 U.S.C. § 46306 (registration violations involving aircraft).

6.     I am aware through training and experience, as well as information from other special agents, aircraft are used by criminal organizations for smuggling illicit goods and people between locations.  Additionally, based on my training and experience, I know that firearms are tools of the illicit smuggling trade and other criminal activity.  As such, firearms and contraband are often within close proximity of each other.   I know that criminal organizations attempt to circumvent customs inspection checkpoints for the purpose of smuggling illicit goods and people into the United States.

7.     Based on the information set forth in this Affidavit, there is probable cause to believe that the two cell phones and Apple iPad, seized from the aircraft and the subjects of my investigation, identified as one (1) an Apple iPhone, black

3

in color, one (1) a Samsung Galaxy cell phone, black in color and IMEI number 358163261434900, and (1) Apple iPad serial number GFPTJHH72D and hereinafter referred to collectively as "the DEVICES") and any and all evidence referred to in Attachment B, are related to alleged criminal violations. There is probable cause to believe that a search of the DEVICES will lead to evidence, fruits, and instrumentalities of the aforementioned crimes. HSI Oklahoma City has custody of the DEVICES in Oklahoma City, Oklahoma. I am submitting this Affidavit in support of a search warrant authorizing a search of the DEVICES for the items specified in Attachment B hereto, wherever they may be found, and to seize all items in Attachment B as instrumentalities, fruits, and evidence of the aforementioned crimes.

8.      Since this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me regarding this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to support the issuance of a search warrant. The information contained in this Affidavit is based upon my personal knowledge and observation, my training and experience, conversations with other law enforcement officers and witnesses, and review of documents and records.

9.      This court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §§ 2711, 2703(a),

4

(b)(1)(A), and (c)(1)(A).  Specifically, the Court is "a district court of the United States. . . that has jurisdiction over the offense being investigated."  18 U.S.C. §2711(3)(A)(i), and "is in . . . a district in which the provider . . . is located or in which the wire or electronic communication, records, or other information are stored." 18 U.S.C. §2711(3)(A)(ii).

## TECHNICAL TERMS

10.  Based on my training and experience, I use the following technical terms to convey the following meanings:

a.   Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files;

5

storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.    Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.    GPS: A GPS navigation device uses the Global Positioning System to display its current location.    It often contains records the locations where it has been.    Some GPS navigation devices can give a user driving or walking directions to another location.    These devices can contain records of the addresses or locations involved in such navigation.    The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth.    Each satellite contains an extremely accurate clock.    Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers.    These signals are sent by radio, using specifications that are publicly available.    A GPS antenna on Earth can receive those signals.    When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

c.      PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs.  Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail.  PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives.  This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers.  For example, PDA users can work with word-processing documents, spreadsheets, and presentations.   PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

d.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178).  Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its

7

source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e.     Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

## PROBABLE CAUSE

11.  On April 25, 2024, HSI Oklahoma City received information from U.S. Customs and Border Protection (CBP), Air and Marine Operations Center (AMOC) that an aircraft bearing tail number N3788Q had failed to file outbound or inbound Advance Passenger Information System (APIS) flight manifests when it flew to and from Mazatlan, Sinaloa, Mexico, as required for all general aviation operators such as this aircraft.  A flight manifest lists passengers for the use of customs and other officials.  Additionally, based on records checks from the Federal Aviation Administration (FAA), this aircraft's registration was possibly invalid.  Based on the believed violations, it was requested that law

enforcement meet the aircraft when it landed to further investigate the violations.

12.  Flight records showed the aircraft, a v-tailed Beechcraft Bonanza bearing US tail number N3788Q, took off from the Sundance Airport located in Yukon, Oklahoma on April 23, 2024.  Yukon, Oklahoma is located in the Western District of Oklahoma. The aircraft arrived at the Baytown Airport, outside of Houston, Texas.   The same day the aircraft proceeded to an airport near Mazatlan, Mexico.

13.   Less than 48 hours after arriving in Mazatlan, Mexico, on April 25, 2024, the aircraft began its return flight to the United States.  Soon after the aircraft took off, the Government of Mexico began tracking the aircraft as a potential NORDO aircraft, which is a term for an aircraft that is flying without radio communications.  The Mexican Secretariat of the National Defense – National Center for Air Space Surveillance and Protection launched an aircraft to obtain the identification of the aircraft.   The aircraft was identified as a v-tailed Beechcraft Bonanza bearing US tail number N3788Q.  This information was communicated to law enforcement in the United States at which time it was determined that the aircraft failed to file an APIS manifest.

14.  Based on the flight plan filed by the aircraft, HSI and other law enforcement partners anticipated the aircraft would land at the Sundance

Airport, so they converged upon the airport. At approximately 2045 hours (CST) on April 25, 2024, law enforcement watched the aircraft land at Sundance Airport. The aircraft taxied to the airport's gas pump. At the gas pump, law enforcement encountered Aiman Sobhy ELKHATIB and Armando MORALES-Alvarado. ELKHATIB provided agents with an Oklahoma driver's license and MORALES-Alvarado provided agents with an identification card issued by the Mexican Consulate and a Mexican voter identification card. Identification documents obtained from both individuals indicated the two reside at the same location in 1615 SW 23rd Street, Oklahoma City, Oklahoma.

15.   Law enforcement database checks show MORALES-Alvarado is an alien unlawfully present in the United States. Further checks show MORALES-Alvarado is assigned Alien Registration Number A026 442 700 and that he had been previously removed from the United States on August 3, 2005. MORALES-Alvarado is a citizen of Mexico.

16.   Furthermore, flight records show the aircraft traveled from Mazatlán, Mexico, to Yukon, Oklahoma, without any other stops. During a post-*Miranda* interview, ELKHATIB confirmed he made the trip without making any stops.

17.   The Sundance airport in Yukon, Oklahoma is not a designated port of entry or other place designated by the Commissioner to conduct border security or customs operations.

10

18.   During a functional equivalent of the border search of the aircraft, agents discovered a loaded Glock handgun found in the cockpit area of the aircraft, placed between the rear seat behind the pilot's seat and the sidewall. MORALES-Alvarado does not possess any status to be in the United States, so he may not possess a firearm lawfully. On December 5, 2023, in Oklahoma County District Court, Case number CF-2023-940, ELKHATIB pleaded guilty to burglary in the second degree and larceny of an automobile.  Sentencing was deferred until December 5, 2026.  Additionally, on April 4, 2024, in Oklahoma County District Court, Case number CF-2021-3782, ELKHATIB pleaded guilty to grand larceny and false impersonation of another.  Sentencing was deferred until April 3, 2031.   As ELKHATIB is presently on probation, he is not legally able to possess a firearm.

19.   In addition to the firearm, the Samsung Galaxy cell phone was seized from the person of MORALES, the iPad from the aircraft, and the black Apple iPhone was seized either from the person of ELKHATIB or the aircraft.  The DEVICES were seized because based upon the training and experience of the law enforcement agents present they believed they contained evidence of the criminal activity being investigated and they wanted to preserve the evidence.

20.   During a post-*Miranda* interview of ELKHATIB, he stated there were no weapons in the aircraft other than a pocketknife. There was no documentation

found, nor did ELKHATIB state that he filed any paperwork with the Bureau of Alcohol, Tobacco, and Firearms to attempt to import a firearm.

21.   Based on a review of ELKHATIB's criminal history, on March 20, 2023, ELKHATIB was arrested in Arkansas for criminal conspiracy and possession with the intent to distribute $38,000 worth of marijuana.  Although arrested, ELKHATIB was never convicted of these crimes.

22.   ELKHATIB was arrested immediately after the search of the aircraft for a violation of 8 U.S.C. § 1324(a)(1)(a)(i) (bringing in an alien at a place other than a designated port of entry).  MORALES was arrested for a violation of 8 U.S.C. § 1326(a) (illegal re-entry by a removed alien).

23.   On the evening April 26, 2024, a federal search warrant of the aircraft hanger used by the aircraft at Sunday Airport, known as aircraft hangar K3, was executed by HSI agents.  Within the hanger, a Ram pickup truck was located, believed to be used by ELKHATIB.  Within the back seat of the truck was a black Glock pistol gun bock, which is believed to be the gun box for the Glock firearm found in the aircraft.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

24.   Based on my knowledge, training, and experience, I know that electronic devices, such as the DEVICES, can store information for long periods of time. Similarly, items that have been viewed via the Internet are typically stored for

some period of time on the device. This information can sometimes be recovered with forensic tools.

25.   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the DEVICES were used, the purpose of their uses, who used them, where they used them, and when.   There is probable cause to believe that this forensic electronic evidence might be on the DEVICES because:

a.   Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).   Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.   Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.   Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.

13

Computer file systems can record information about the dates files were created and the sequence in which they were created.

b.      Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.      A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.      The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

14

e.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, it is sometimes necessary to establish that a particular thing is not present on a storage medium.

f.     I know that an electronic device can be an instrumentality of the crime and also can be a storage medium for evidence of the crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was use; data that was sent or received; and other records that indicate the nature of the offense.

26.   In addition to any electronic evidence described above, I am seeking authority to search for any items detailed in Attachment B.

27.   Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the DEVICES consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

28.   Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, your Affiant submits

there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

29.   Based upon my training and experience, I am aware that individuals involved in smuggling often use cell phones to maintain contact with other co-conspirators, including suppliers, transporters, distributors, and purchasers of illicit goods.   Such cell phones and their associated memory cards commonly contain electronically stored information which constitutes evidence, fruits, and instrumentalities of smuggling offenses including, but not limited to, the phone directory and/or contacts list, calendar, text messages, e-mail messages, call logs, photographs, and videos.

## CONCLUSION

30.   Based on the foregoing, I believe that probable cause exists for a search warrant authorizing the examination of the DEVICES described in Attachment a to seek the items described in Attachment B, which will constitute contraband, fruits, instrumentalities, and evidence of federal crimes in violation of 8 U. S. C. § 1324(a)(1)(a)(i) (bringing in an alien at a place other than a designated port of entry), 8 U.S.C. § 1326(a) (illegal re-entry by a removed alien), 18 U.S.C. § 922(g)(5) (prohibited person in possession of a firearm), 18 U.S.C. § 545 (smuggling goods into the United States contrary to law), 18 U.S.C. § 922(a)(1) (transporting firearms and ammunition in interstate or foreign commerce

16

without a license), 19 U.S.C. § 1590, (aviation smuggling), and 49 U.S.C. § 46306

(registration violations involving aircraft).  Therefore, I respectfully request that

this Court issue a search warrant for the DEVICES, described in Attachment A,

authorizing the seizure of the items described in Attachment B.

JOSHUA DICKSON
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN to before me this 6th day of May, 2024.

SHON T. ERWIN
United States Magistrate Judge

## **ATTACHMENT A**

The property to be searched is a (1) an Apple iPhone, black in color and hereinafter referred to collectively as "the DEVICE"). The DEVICE is currently stored in the HSI Oklahoma City evidence vault, located at 3526 NW 56th Street, Oklahoma City, OK 73112. The DEVICE is as shown below:

1.  One (1) Apple iPhone, black in color:



### ATTACHMENT B

1.      All records on the DEVICE described in Attachment A that relate to violations of 8 U. S. C. § 1324(a)(1)(a)(i) (bringing in an alien at a place other than a designated port of entry), 8 U.S.C. § 1326(a) (illegal re-entry by a removed alien), 18 U.S.C. § 922(g)(5) (prohibited person in possession of a firearm), 18 U.S.C. § 545 (smuggling goods into the United States contrary to law), 18 U.S.C. § 922(a)(1) (transporting firearms and ammunition in interstate or foreign commerce without a license), 19 U.S.C. § 1590, (aviation smuggling), and 49 U.S.C. § 46306 (registration violations involving aircraft), including:

  a.      Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show address book information, including all stored or saved telephone numbers or other contact information.

  b.      Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show call log information, including all telephone numbers dialed from the DEVICE and all telephone numbers accessed through any push-to-talk functions, as well as all received or missed incoming calls.

  c.      Records, documents, programs, applications or materials, or evidence of the absence of same, sufficient to show instant and

social media messages (such as Facebook, Facebook Messenger, Snapchat, FaceTime, Skype, and WhatsApp), SMS text, email communications, or other text or written communications sent to or received from any digital device.

d.     Audio recordings, pictures, video recordings or still captured images on phone memory cards, or other storage related to the planning, coordinating, motive, and or executing activities in furtherance of violations listed above.

e.     Contents of any calendar or date book stored on the DEVICE.

f.     Global Positioning System ("GPS") coordinates and other information or records identifying travel routes, destinations, origination points, and other locations.

g.     Evidence of who used, owned, or controlled the device at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence.

h.     Evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses,

and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software.

i.      Evidence of the attachment of other devices.

j.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device.

k.      Evidence of the times the DEVICE were used.

l.      Passwords, encryption keys, and other access devices that may be necessary to access the device.

m.      Applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the DEVICE or to conduct a forensic examination of it.

n.      Records of or information about Internet Protocol addresses used by the DEVICE.

o.      Records of or information about the DEVICE'S Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

p.      Evidence indicating how and when the account was accessed or used, to determine the chronological and geographic context of account access, use and events relating to the crime under investigation and the account subscriber.

q.      Any records pertaining to the means and source of payment for services (including any credit card or bank account number or digital money transfer account information).

r.      Evidence indicating the subscriber's state of mind as it relates to the crimes under investigation.

s.      Evidence that may identify any co-conspirators or aiders and abettors, including records that help reveal their whereabouts.

t.      Records, documents, and information relating to financial transactions conducted in furtherance of violations listed above.

2.      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

3.      This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this

4

warrant.   The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.   Pursuant to this warrant, HSI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.